UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT BEUTEL, <br><br> Plaintiff, <br> v. <br><br> WELLS FARGO BANK, N.A., a.k.a. WELLS FARGO BANK, a.k.a. WELLS FARGO BANK AND COMPANY, a banking corporation, WELLS FARGO BANK AND COMPANY, a Delaware corporation, NDeX WEST, a limited liability company, DOES 1 through 20, <br><br> Defendants. | Case No.: 11-CV-04357-LHK <br><br> ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION |

Before the Court is Plaintiff Scott Beutel's motion for a preliminary injunction. Beutel seeks to enjoin the foreclosure sale of his home at 26169 Atherton Drive, Carmel, CA ("subject property") because he claims that Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") has breached its covenant of good faith and fair dealing. *See* ECF No. 15. Defendant filed an opposition on September 27, 2011, and Plaintiff failed to file a reply. *See* ECF No. 24. A hearing was held on October 20, 2011. For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is DENIED.

**I.  Factual Background**

Plaintiff purchased the subject property in 1999. In August 2001, Plaintiff took out an initial home mortgage ("initial mortgage") with World Savings Bank, FSB ("World Savings"), and borrowed approximately $543,000. In February 2003, Plaintiff entered into an equity line of credit

("ELOC") agreement with World Savings with a credit limit of $54,300. The ELOC, like the initial mortgage, was secured by a deed of trust against the subject property.

In 2004, a dispute arose between Plaintiff and World Savings Bank regarding fire and liability insurance required for the subject property. Plaintiff claims that World Savings wrongfully took money from his escrow impound account to pay for insurance on the Subject Property, even though he had already obtained the required insurance. Plaintiff objected to World Savings that he had already purchased insurance, provided proof, and the money was apparently refunded. The issue of the property insurance came up again in 2006. Plaintiff claims that at some point in 2006, World Savings took money from Plaintiff's escrow impound account to pay for property insurance. Plaintiff claims that he again provided World Savings with proof of insurance, but the money was never refunded. Plaintiff claims that he has been continually insured since 2003.

World Savings Bank was renamed Wachovia Mortgage, FSB on December 31, 2007. Effective November 1, 2009, Wachovia Mortgage, FSB was converted to a national bank and eventually became Wells Fargo Bank, N.A.

In 2009, Plaintiff attempted to open a business checking account with Wachovia from which his mortgage payments could be automatically deducted. Plaintiff funded this account with over $40,000, but encountered difficulties in setting up the automatic payments. After failing to set up the automatic mortgage payments, Plaintiff then demanded a return of funds. He encountered difficulties in retrieving his money from the account, but succeeded on March 25, 2009.

During this same period, Plaintiff fell behind on his ELOC, allegedly because of difficulties with the automatic payments, and Plaintiff's ELOC was suspended. In August 2009, Plaintiff visited a bank branch and attempted to pay down the balance on the ELOC, but was told he lacked documentation as to the amount owed. Plaintiff requested and later received a documentation letter, which listed the payoff balance as $450.04. The documentation letter also explained that the offer allowing him to pay off the equity credit line was "void after 8/17/09," the same day that the letter was dated, and three days before the letter was post-marked. Wells Fargo claims that it sent multiple letters to Plaintiff regarding the ELOC loan payoff before the attempted August

2
Case No.: 11-CV-04357-LHK
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

resolution. Plaintiff alleges multiple unspecified attempts to resolve the ELOC delinquency after August 2009.

According to Wells Fargo's records it appears that Plaintiff began making late payments on his initial mortgage in October 2009. Starting in February 2010, Plaintiff withheld three monthly payments on his initial mortgage, instructing Wells Fargo/Wachovia that the payments should be made using the monies wrongfully withdrawn from the escrow impound account in 2006. Plaintiff's last payment was made in mid-February 2010 and was intended as a payment on the initial mortgage payment originally due January 1, 2010. In May 2010, Plaintiff visited a Wells Fargo/Wachovia bank branch and attempted to make a monthly payment. Plaintiff claims that this payment was refused. Under the terms of the initial mortgage contract, Defendant had the right to demand payment of the full outstanding balance on the loan.

Several times in 2011, Plaintiff claims that he was told by Wells Fargo during phone conversations that no foreclosure would result from failure to pay off his ELOC, and that the most severe consequence would be placement of a "lien on the first deed of trust." Plaintiff received letters contradicting these representations. The ELOC is currently in foreclosure and a notice of trustee's sale was sent by Defendant. In addition, between February 4, 2010 and July 26, 2011, the bank sent at least seven notifications to Plaintiff concerning the delinquency on the ELOC, and since October 2009, Wells Fargo has written at least seventeen times regarding the delinquency on the initial mortgage. Plaintiff declares that he received multiple phone calls from Defendant, in which Wells Fargo sought to collect the delinquent payments. Plaintiff declares that he responded by seeking to recapture the money taken from his escrow impound account, but declined to pay the delinquent amounts until Defendant remedied the alleged breach. Plaintiff has made no payments on either the ELOC or the initial mortgage since February 2010.

Because the ELOC requires that the initial mortgage be kept current, Defendant requires payment of delinquencies on both the ELOC and the initial mortgage to forestall foreclosure. In total, Plaintiff has failed to make 21 payments on his Initial Mortgage and the total past due is $80,507.52. The total due to reinstate the ELOC is $2,855.98. The parties have stipulated to a stay of foreclosure pending the outcome of this motion.

3

Case No.: 11-CV-04357-LHK
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff now seeks a preliminary injunction to prevent foreclosure based upon his claim for breach of the covenant of good faith and fair dealing. Plaintiff alleges that Defendant and its predecessors in interest and their employees breached the covenant when they (1) repeatedly made false statements of fact to plaintiff regarding whether or not his home was in foreclosure, (2) failed to perform loan servicing functions consistent with their responsibilities, (3) failed to properly supervise their agents and employees including without limitation, their loss mitigation and collection personnel, (4) demanded information already in their files, (5) made inaccurate calculations and determinations of the sums owed by plaintiff under his loans with defendant and its predecessors, and (6) failed to follow through on written and implied promises.

## II.     Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted). The issuance of a preliminary injunction is at the discretion of the district court. *Indep. Living Ctr. v. Maxwell-Jolly,* 572 F.3d 644, 651 (9th Cir. 2009). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F. 3d 1196, 1201 (9th Cir. 2009).

## III.    Discussion

Plaintiff must establish that he is either likely to succeed on the merits of his claim for breach of covenant of good faith and fair dealing or that he raises serious questions going to the merits of his claims in order to obtain a preliminary injunction. Plaintiff has not met his burden.

Under California law, a claim for breach of the covenant of good faith and fair dealing requires (1) that a contract exists between the parties, (2) that the plaintiff performed his contractual duties or was excused from nonperformance, (3) that the defendant deprived the plaintiff of a

4

benefit conferred by the contract in violation of the parties' expectations at the time of contracting, and (4) that the plaintiff's damages resulted from the defendant's actions. *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010) (*citing Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968). Specifically, Plaintiff has not met his burden because he has not established (1) that he has performed his contractual duties or that he was excused from nonperformance, or (2) that the foreclosure of his home is a result of the defendant's actions.[1]

### A. Plaintiff's Failure to Perform

Plaintiff must establish that he has performed his contractual duties or was excused from nonperformance. Plaintiff has not performed under his contractual duties as he has not made any monthly payments on either his ELOC or his initial mortgage since February 2010 as he is required to do under the terms of the contract.

Plaintiff's initial failure to pay may be excused by Wells Fargo's alleged breach of withdrawal of money from Plaintiff's impound account for the purposes of paying for property insurance. However, "[u]nder basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided or continue its performance and sue for damages. Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits." *See Jay Bharat Developers, Inc. v. Minidis,* 167 Cal.App.4th 437, 443 (2008) (internal quotation marks omitted). Thus, if Plaintiff believed in 2006 that Wells Fargo's predecessor breached the terms of the agreement he could have initiated court action to recoup the amount withdrawn, terminated the contract, or paid his mortgage and ELOC payments into an escrow account. *See, e.g. Wilson v. Wells Fargo Bank*, No. 11-03394, 2011 WL 3443635 at *3 (N.D. Cal. Aug. 5, 2011). He was not allowed to stop making payments while continuing to take advantage of the contract's benefits by remaining in possession of the home.

### B. The Damage Has Not Resulted From Defendant's Actions

---

[1] Because Plaintiff has not established these elements of his breach of covenant of good faith and fair dealing claims, the Court need not address the remaining arguments presented by Defendant.

5
Case No.: 11-CV-04357-LHK
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION

1    Breach of the covenant of good faith and fair dealing requires that the remedy must flow

2    from the breach. *Carma Developers, Inc. v. Marathon Development California, Inc.,* 2 Cal. 4th

3    342, 372-73 (1992). If the foreclosure does not result from the wrongs that form the basis of

4    Plaintiff's claims, an injunction against the foreclosure is not an appropriate remedy. *See Avila v.*

5    *Countrywide Home Loans, Inc.*, No. 10-05485, 2011 U.S. Dist. LEXIS 34071 (N.D. Cal. Mar. 29,

6    2011) (plaintiffs must show that "the plaintiff's damages resulted from the defendant's actions");

7    *see also Lewis Jorge Const. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 969

8    (contract damages must represent "loss[es] that occurred by reason of injuries following from the

9    breach") (citations and internal quotation marks omitted).

10   Plaintiff does not appear to base his claim upon the 2006 allegedly wrongful withdrawal of

11   money to pay for property insurance presumably because such a claim would be time-barred. *See*

12   *Esoimeme v. Wells Fargo Bank*, No. 10-2259, 2011 WL 3875881 (E.D. Cal. Sept. 1, 2011) (four

13   year statute of limitation for breach of covenant of good faith and fair dealing in California).

14   Plaintiff asserts six other bases for his claim for breach of the covenant of good faith and fair

15   dealing. These include claims that Defendant (1) repeatedly made false statements of fact to

16   plaintiff regarding whether or not his home was in foreclosure, (2) failed to perform loan servicing

17   functions consistent with their responsibilities, (3) failed to properly supervise their agents and

18   employees including without limitation, their loss mitigation and collection personnel, (4)

19   demanded information already in their files, (5) made inaccurate calculations and determinations of

20   the sums owed by plaintiff under his loans with defendant and its predecessors, and (6) failed to

21   follow through on written and implied promises. None of these alleged breaches, however,

22   resulted in the foreclosure of the subject property.

23   (1) **False statements**. The false statements made to Plaintiff that his home was not going

24   into foreclosure did not cause the foreclosure – Plaintiff's non-payment of his ELOC balance and

25   initial mortgage payments caused the foreclosure. There is no indication by Plaintiff that he was or

26   is prepared to pay the sum required to reinstate the Initial Mortgage and ELOC, as would have

27   been required to avoid default on his ELOC. *See DeLeon v. Wells Fargo Bank, N.A.*, 2011 U.S.

28   Dist. LEXIS 8296 (N.D. Cal., Jan. 28, 2011).

      **(2)-(3) Loan Servicing Functions/Failure to Supervise.** Plaintiff also asserts vague allegations that Wells Fargo failed to perform loan servicing functions consistent with their responsibilities and failed to properly supervise their agents and employees including without limitation, their loss mitigation and collection personnel.  To the extent that they do not overlap with other allegations, these allegations likely refer to two occurrences.  The first occurrence, in May 2009, was Defendants' refusal to allow Plaintiff to resume normal monthly payments on his initial mortgage after he had deliberately withheld mortgage payments for three months (and had apparently fallen behind in his mortgage payments several months prior to that).  This cannot be the basis for a claim, since the deed of trust explicitly permits the bank to "demand immediate payment of all sums secured."

      The second possible basis is Defendants' 2011 failure to refund over $17,000 that Wells Fargo has admitted has been withdrawn from Plaintiff's escrow account to pay for property insurance.  Although the contract permits such withdrawals, there appears to be a factual dispute as to whether Plaintiff actually has insurance on the subject property and whether Plaintiff has adequately provided this proof of insurance to Wells Fargo.  Nonetheless, Wells Fargo's failure to refund is not the cause of the foreclosure sale.  This is because the money Wells Fargo withheld is less than one quarter of the amount owed on the two notes, both of which would have to be paid to avoid foreclosure on the ELOC.

      **(4) Information Demand**.  Plaintiff also asserts that Defendants repeatedly demanded information allegedly in their files.  This apparently refers to Defendants' August 2009 demand for documentation of the precise amount owed on the ELOC before allowing Plaintiff to pay down the balance.  It is apparent from the record, however, that Plaintiff received several notices of the amount due prior to August 2009, and could have paid down his ELOC at that time.  Plaintiff also received notices after August 2009, which he declined to pay unless Defendants remedied their alleged wrongful withdrawal of money to purchase property insurance.  Again, Plaintiff's ongoing failure to pay the balance of his Initial Mortgage and ELOC is the cause of foreclosure on his ELOC, rather than a specific demand for more documentation in August 2009.

1     (5) **Inaccurate Calculations**.  Plaintiff also alleges that Wells Fargo made inaccurate
2  calculations in July 2011 regarding the amount owed on the ELOC. Plaintiff apparently received
3  conflicting information as to the precise sum owed as foreclosure proceedings progressed, and
4  submits notices he received from Defendants that support this allegation.  *See* Beutel Decl. ¶ 18,
5  19, 20.  This basis for Plaintiff's claim, however, did not cause the impending foreclosure sale.
6  Indeed, Plaintiff admitted that in June 2011, after receiving a notice of default on the ELOC for
7  $864.03, he told Wells Fargo that he wanted to pay the ELOC balance, "but was not going to pay
8  for double insurance." *Id.* ¶ 14.  Thus, Plaintiff explicitly refused to pay an outstanding balance
9  regardless of any of the alleged miscalculations as recently as June 2011.  Furthermore, it does not
10  appear that Plaintiff has attempted to make any payment since the initiation of the foreclosure
11  process.

12     (6) **Failure to Follow Promise**.  Finally, Plaintiff's allegation that Wells Fargo failed to
13  follow through on written and implied promises is too vague to support a finding that the plaintiff's
14  damages result from the defendant's conduct.  To the extent that such promises are included in the
15  original contracts, the Court has already addressed them.  To the extent that any such contractual
16  promise postdates the original contracts and are written, they have not been included as evidence
17  and thus cannot be evaluated.  Finally, any oral agreement altering the contracts would be invalid
18  under the statute of frauds.  *See* Cal. Civil Code § 1624, 1698.

19     In sum, the reason for Plaintiff's impending foreclosure is not the breach of Wells Fargo's
20  duty of good faith and fair dealing, but rather Plaintiff's failure to keep current with his mortgage
21  and ELOC payments.  Although Plaintiff alleges that Wells Fargo rejected a mortgage payment in
22  May of 2010, it does not appear that he has made any other attempts to make payments on the past
23  due amounts or to bring his accounts into compliance with the terms of the ELOC or initial
24  mortgage deeds.  While the Court is sympathetic to the issues that Plaintiff has faced in dealing
25  with Wells Fargo and its predecessors, they are not the cause of the impending foreclosure.  Rather,
26  it is Plaintiff's failure to timely make his payments on his loan obligations that is the cause of the
27  foreclosure sale.

Because Plaintiff has neither established a likelihood of success on the merits nor raised any serious question going to the merits of the claim asserted, no preliminary injunction may issue. The Court recognizes that Plaintiff's loss of his home is an irreparable harm. *Reed v. Wells Fargo Bank*, No. 11-00194, 2011 WL 1793340 *6 (N.D. Cal. May 11, 2011). Nonetheless, the balance of the equities do not necessarily favor Plaintiff because he has not shown a likelihood of success on the merits, and "[e]quity does not favor allowing Plaintiff[] to avoid foreclosure having ceased making payments of any kind to anyone." *Wilson*, 2011 WL 3443635 *3. Finally, while homeownership is in the public interest, as evidenced by the tax benefits and other subsidies provided to home owners, it is not in the public interest to delay a foreclosure and afford relief to those deserving security on a defaulted loan. *Id.* Therefore, after weighing all the factors, the Court denies the motion for a preliminary injunction.

The Court notes that parties have stipulated to a delay of the foreclosure sale from September 14, 2011 until October 31, 2011. Notice of Default and Election to Sell recorded on May 3, 2011 states that Plaintiff has "the legal right to stop the sale of [his] property by paying the entire amount demanded by [his] creditor." The July 29, 2011 Notice of Trustee's Sale at 10:00 a.m. on August 24, 2011 was predicated upon this earlier Notice of Default and Election to Sell. Although any Notice of Trustee's Sale on September 14, 2011 has not been submitted into evidence, such sale may also be conditional on the recorded Notice. Defendants have continuously demanded the delinquent payments, plus penalties and fees, at this point totaling $83,363.50, to reinstate Plaintiff's loans. Plaintiff's counsel has represented to the Court that Plaintiff has the funds to pay off the full amount in arrears. Although the Court has denied Plaintiff's Motion for a Preliminary Injunction, the Court notes that legal remedies may exist for Plaintiff to avoid the pending foreclosure sale.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is DENIED.

**IT IS SO ORDERED.**

Dated: October 20, 2011

_____
LUCY H. KOH
United States District Judge

9

Case No.: 11-CV-04357-LHK
ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION